We'll take up United States versus Jones, case number 21-5079. Morning. Good morning. I'm Dean Sandiford from the Noble Vendors, and I represent Jeopardy! Jones. Because juries are the sole object of credibility, no witness can testify that they believe another person's story. But in this case, Ms. Jones did just that, repeatedly testifying that she believed her daughters and didn't think they would lie about something like this. This testimony was improper, and it was deeply prejudicial. The case against Mr. Jones- Counsel, counsel, you're cutting out a little bit when you're not real close to the mic, so keep the mic up and kind of keep your mouth as close to it as you can, okay? Don't swallow it, but just keep it very close. Thank you. All right, I'll try not to do this. This testimony was improper, and it was deeply prejudicial. The case against Mr. Jones was turned entirely on whether the jury believed the accusations beyond a reasonable doubt. And to hear over and over that the girl's own mother believed them made it much more likely that the jury would as well. Even on plain air review, this court should reverse Mr. Jones' convictions. This improper testimony from Ms. Jones was extensive. Early in her testimony, she was asked directly if she believed her daughters, and she says, yes, I believe them. Several pages later, the prosecutor asks why she believed them, and she says, I don't believe they would lie about anything like this. The prosecutor then immediately got her to repeat this and said, so you believe your daughters because they wouldn't be untruthful about something like this? And she says, I believe they would tell the truth in something like this, they wouldn't lie. She also elicits testimony that Ms. Jones used to trust Mr. Jones and doesn't anymore, that she thought her daughters were protected, but doesn't anymore. The obvious import is that she doesn't trust him anymore, doesn't think her daughters were protected because she believes in the truth of the accusations. Council- What is that testimony about? I'm sorry, go ahead, Judge Bell. No, you go ahead. Well, counsel- I was just gonna say that. You go, Judge Bell. You're the- Seniority. Okay. Well, rule 608 allows a general opinion on truthfulness about a witness, but only after the witness has been attacked for credibility. So at the time that the mother said, these children wouldn't probably lie about something like this, had at that point a witness been attacked for credibility, and if so, who had been attacked? Was it the children's testimony or was it the mother's testimony that had been attacked at that time, as of that moment? She was the very first witness, and this was on direct examination. So no one's credibility had been attacked at that point. And this testimony really went much further than what rule 608 would allow anyway, because rule 608 only allows testimony about a witness's general character for truthfulness. It never allows a witness to testify. I just, I don't disagree with that, but that wasn't the factual question because there was another requirement that had to be met too, a predicate. I just was interested in that. I understand your other point, of course. Okay, great. And so, this court's case is addressing this kind of testimony that another witness's account are truthful. They've all been in the context of expert testimony, but it's clear that the same prohibition exists for lay witnesses, and it's for the same reasons as expert testimony.  of a witness's credibility, it's just not helpful to the jury for a witness to say, yeah, I believe somebody else is telling the truth. Helpfulness is a requirement, of course, under both the expert rule and the lay witness rule, which is 701B. Does it make any difference that, I think it was Dr. Baxter eventually testifies that the mother initially says to him that she thinks her girls are lying, that she believes her husband. So, is this all somehow relevant to sort of explain how she changes position? And first, she's visiting husband in jail, she's visiting Mr. Jones in jail, and eventually, she no longer is doing that. Is there any relevance to any of that? I mean, there could be in a different case, but that's just not the way her testimony unfolded. I mean, she doesn't say, I believe them now because such and such happened that changed my mind. She says, I didn't believe them. I mean, I believed them because I don't think they would lie about something like this. So, the government suggests in their brief or- She doesn't explain why she had a change in her view? I mean, she's asked, point blank, did you believe your daughter? She says, yes. This is her direct, okay. Yeah, this is her direct examination. So, the government suggests in its brief that it was after KB made certain gestures that she changed her mind, but the testimony just doesn't support that. I mean, she does testify that KB made gestures, but she doesn't tie her belief in their stories to those gestures. She just says, I don't believe they would lie about something like this. I mean, this is deeply prejudicial testimony. I mean, this is their mother. This is the woman who raised them. She knows them better than anyone possibly could. And for the jury to hear from her repeatedly that she believed what her daughters were saying, it's gonna have a powerful impact on the jury. I mean, they had maybe an hour, 45 minutes to evaluate the girl's credibility on the stand. Their mother had known them for years, for their entire lives. Why wouldn't a jury, I mean, why wouldn't any person defer to what their own mother thinks about whether they're telling the truth? Well, they also heard, the jury also heard that their own mother didn't believe them, that she thought they were lying, that she supported Mr. Jones. So, I mean- Well, they did hear something. In the big picture, I mean, maybe that all kind of balances out to not be particularly influential. I mean, in her own testimony, what she says is that she was conflicted at first because she was so surprised by the allegations. But from her own testimony, she, you know, I was conflicted at first because I was surprised, but fundamentally, I believe them. They're my children, and I don't think they would lie about something like this. So, I think that's gonna override any conflicting testimony from a more minor witness later on in the trial. What about the fact that the two young victims were, their testimony was fairly detailed, fairly consistent, the manner in which they disclosed it didn't indicate any, I mean, they disclosed it to a teacher. They were afraid to disclose it to their mother because they thought she wouldn't believe them. What about all of that? I mean, I understand it's a he said, she said. Yeah, I mean- Two young victims who are consistent in detail. Right, I mean, and all of that evidence is probative. I mean, we certainly don't dispute that. I mean, unfortunately- But how does that weigh in children? You're suggesting that this made the difference. Well, I mean, children can learn these kinds of details of knowledge about sexual activity from a neighbor. Was there any evidence that happened here? No, but I think jurors bring to bear their common experience, and people just know this to be the case. And, you know, on the flip side, there was no corroborating evidence of the sort that you often see in these cases. There was no evidence of behavioral changes associated with abuse, no evidence of declining grades at school or anything like that. There was also evidence that they- No, go ahead. I'm sorry. No, I'm not gonna ask that question. I started to and changed my mind. Okay, there was also evidence that they asked to stay at home with him, which is hard to square with these accusations of abuse too. And again, there was no other corroboration from physical evidence or eyewitnesses or anything like that. But didn't they tell the social worker that, at least one of them, that over a period of time, she, that the social worker said that she was very obviously upset about something and acting not normally and- Well, there was evidence from, I think it was the school teacher that when she came into school, she was very upset. And, you know, she was very upset and made this accusation. Obviously, we don't know. Children get upset about things. And that was really the only evidence of any kind of behavioral change. And, you know, otherwise they were asked, how are you doing in school? Things like that. And they were doing fine, which is not a normal reaction. You know, we know from children who are abused. So that's certainly something that Jerry could have taken into account. You know, the government also put some weight on Mr. Jones's statements, his phone call and the interview, but they're just not that probative. I mean, in the phone call, the government says, well, he just asked when he was gonna be interviewed, but we hadn't told him he was a suspect. But they told him that he couldn't have contact with the girls or live with them anymore. Naturally, he's gonna know he's a suspect at that point. And in his interview with a detective, he consistently denied the allegations. And the detective, the only thing he found odd about it was that he was very still and quiet. Mr. Jones is a Native American. There could be cultural differences that explain that. And some people just react to stressful situations by freezing up. There's nothing inherently suspicious about that kind of behavior in a police interview. Unless the court has further questions, I've reserved my time. I think that's fine. Thank you, counsel. May I please the court, Lena Long for the United States. Once again, I'm before the court to argue about whether there are errors. And here, the defense cites a number of cases suggesting that it is always error for a lay witness to give opinion testimony about the credibility or veracity of another witness. However, a look at those cases suggests some limitations. In particular, it falls into question whether that is in fact, at this time, the law in the 10th Circuit. In particular, the Schmitz case from the 11th Circuit cites a number of cases for the proposition that it is improper for lay witnesses to give opinion testimony. But it does so in the context of whether a defendant may be asked whether the other of the government's witnesses against him are liars. And among the cases it cites is a 10th Circuit case that has a Bud C. Williams. Williamson 53, F3rd, 1500. And Williamson goes back, it's a 1995 case that goes back to the 2nd Circuit case, Richter from 1988, that talks about this principle about whether it is improper to ask a defendant whether the prosecution witnesses are lying. And in Williamson, this court goes, evaluates Richter in some detail and goes through all the 2nd Circuit case law after Richter, and notes that those later 2nd Circuit cases limit that principle that the defendant may not be asked if the government's witnesses are lying. And in particular, finds that the limitations are if the government's witnesses are law enforcement witnesses, if the prosecutor calls a rebuttal witness to emphasize the defendant's calling the other government's liars, and whether in closing argument, the government emphasizes that in order to convict, the jury would have to find that all the government's witnesses were lying. This argument in the brief? I didn't think so. No, this wasn't your argument. Let's talk about what your argument was, because I didn't really see your brief even responding to the 608 argument that they made. You just took a different approach and basically said, well, she's a lay witness, and it provided context. So that's problematic, that's problematic. The position on Rule 701 certainly is that she was a lay witness and was entitled to give opinion testimony based back around her perception. Simply because it was admissible under 701 doesn't mean it was not inadmissible under 608, which was the argument that you never addressed in your brief, you never responded. So I guess I'd like to have you respond more specifically to that today. Yes. This- She was a first witness. Yes. She testified that she believed her daughters more than once. And to judge- She vouched for their credibility, and credibility is the only issue here. Yes. At the time that Crystal testified, there had been no previous testimony attacking the credibility of her daughters. And if we were before this court, not on plain error, I think we would have a real problem. Okay. Because the record, however, as a whole demonstrates why those questions were asked and why they were helpful to understand in Crystal's testimony and Crystal's story throughout the story- But the jury doesn't know that yet. She's the first witness. There's no reason for her to talk about their character. I mean, it's just not there. It's error. The defense tried to elicit on cross-examination. And frankly, the government probably anticipated that the defense would succeed in eliciting on cross-examination that Crystal did not believe her daughters. And she explicitly said so before the daughter's physical exam. She said, my daughter lies. Or, yes, she said, my daughter lies. And she said she didn't believe that the abuse had occurred. And she didn't believe that the defendant had- And that came out. That came out through Dr. Baxter in page 270 of volume three. And those were the admissions that she had previously called her daughters liars and that she initially believed the defendant and that believed that the abuse hadn't occurred. That the defense attempted to elicit on cross-examination. And again, that the government probably expected that it would have come out on cross-examination. Crystal did not make those admissions on cross. And frankly, under rule 608, because they hadn't come out at the time of her testimony, that was likely error under rule 608. However- You know, the counsel might concern about 608 is that character testimony. I have two concerns here. First, rule 608 says it's admissible only after the witness's character has been attacked. And apparently that had not yet happened. It was anticipated it would happen, but it hadn't yet happened. And that seems just contrary to the clear language of 608. And secondly, it's pretty clear that in the character testimony, you have to give only general reputation of characters. Their true reputation for truthfulness. They have a character, not reputation, excuse me, but a character for truthfulness. But her testimony went way beyond that and said, I believe them in this case, in this specific case, not about their character for truthfulness, but I'm gonna go further and say, I believe what they said here. So those are the two big concerns I think that would surely raise my antenna as a district judge. How do you really address those two? In two ways, your honor. First, to the extent that we can argue that this was not error under 608, that argument would be that Crystal's testimony did not go to the girl's character for truthfulness at all. That rather she was addressing her belief about their veracity on this occasion. Which bumps it from rule 608 back to 608, back to rule 701. And then rule 608 does permit the testimony and not just reputation in the community or reputation for truthfulness, character for truthfulness, or for truthful character, but also permits a witness to give an opinion about another witness's character for truthfulness. Not just reputation, if you look at rule 608A. So, and I realize those are sort of contradictory arguments. First, we don't think this was character testimony, which removes it from the province of rule 608 and puts it back into opinion testimony under 701, which we think was proper here because it was rationally based on her perception. And it went to explain or give the jury a better understanding of the contents of her testimony and addressing the fact that she actually testified, or actually had initially not believed her children. And so it was relevant that over the course of the case, she came to believe them. And as set forth in our brief, why she came to believe her daughters. And the chronology was that she didn't believe the children. She went to visit her husband in jail. She said the girls lie. She didn't believe the abuse had occurred, but then they heard, and then she came to believe them. The causal relationship may not be in the brief, the chronological relationship is there. So that is why this testimony was appropriate under rule 701. And to the extent that her testimony could be read as going to character, rather than her opinion of the girls veracity, that error wasn't claimed because it addressed the later attack on the veracity of the girls where the jury heard that their own mother said, my daughter lies. I don't think this ever happened. So the context of the mother's journey from not believing them to believing them was relevant to help the jury understand her testimony in this case. More to the point of all of this, the mother did testify and was asked repeatedly whether she believed her daughters. If that is error, that error arguably was not plain because in the Williamson case, the 10th circuit explained that it found  of the second circuit in that line of cases about asking witnesses, particularly defendants about the veracity of other witnesses. But even if that error was plain, it did not affect Jeffrey Jones' substantial rights for a number of reasons. First, the jury had ample opportunity to observe these two girls testify for several hours over the course of two days. They saw their demeanor, the girls were cross-examined by the defense. And the defense got one of the girls to admit that she lied and that she told big lies. Yeah. So there was some reason for the jury to think that there's a credibility issue here or that they may have been lying. And the defense said in this closing argument, in her closing argument, this is what this case is all about. It's about whether you believe these two witnesses. If you believe them, he's guilty. That's what the case was all about. And I struggle to see how a mother verifying multiple times that she believed her daughters might not have been what took it. The mother's reference to believing her daughters several times, but very briefly in her testimony was never referenced in the closing argument. The mother's, it was referenced in the closing argument that this was all about whether you believe them. That's what the prosecutor said. This is, if you believe them, it's over. Yes, and that's exactly right. And that is my point. So the jury goes back and says, well, why would we believe them? Let's see. Let's see. Supposedly they lie and the one girl, young girl admits she lies, one victim admits she lies. And even the mom, you know, apparently said that they lie, but now the mom says, oh, she does believe them. In the interest of accuracy. I mean, why isn't that? Both girls testified that they lie. That a younger girl maybe testified that she lies about small things, about whether she fed her dogs, about whether she and her sister were fighting and things like that. And she articulated that those were not the kinds of things that were mentioned. The older sister conceded that she lied about a big thing, which is to say that in the earlier trial of this case, she had not laid out the full panoply of abuse that the defendants had subjected her to. And the reason that the jury nonetheless could choose to believe these girls was not some candidate for a vouching testimony by the mother, but because they had the opportunity to observe these girls, hear them testify, to hear Jameda Williams' testimony about the process of disclosure in sexual abuse cases. They heard her testify that disclosure is a process, not an event. And that how willing and able a victim is to testify about the abuse they had suffered varies based on the type of disclosure. And in fact, in this case, maybe the younger girl, only eight years old at the time, had come forth and made that disclosure to her teacher because in part, she thought her mother would not believe her because she lied about small things, which is why it was so important to address the fact that she does lie. But that victim, who had eight years old and told her about it, seemingly the older sister, the 12-year-old at the time, did not voluntarily come forward at the time. She was forced to confront the abuse she had suffered at her stepfather's hands because her younger sister had bravely come forward and talked to that teacher. But she did not fully disclose in 2017 when this occurred. And it was only four years later after McGirt reversed their stepfather's first conviction when she was forced again to come forward and confront the abuse when she, for the first time, felt comfortable, was able to be forthcoming about what anything she was willing to disclose, which is why Ms. Williams' use of the word forthcoming is not an issue in this case, does not go to whether Ms. Williams believed CV, but rather to where CV was at the time of this trial, as opposed to at the time of her previous discovery and went to the jury's ability to assess the credibility of CV, despite her prior inconsistent statement, despite the fact that she admitted that she had lied in the previous trial by not disclosing all of the abuse she had suffered. And for all of those reasons, and because the jury was in the best position to observe these two witnesses, because these two witnesses had given consistent testimony in many respects over the course of two trials over four years, because two juries had been gifted history of sexually abusing his stepdaughters, this was not the kind of error that affects the fairness and integrity or public reputation of judicial proceedings. And for that reason, I would ask this question. Thank you. Thank you, counsel. Rebuttal. I have a couple of points. I don't really understand the relevance of the fact that he was convicted twice in state court. We don't know what those trials looked like. We don't know if this kind of testimony was offered. It just doesn't seem relevant at all to me. Moving back to something that was said earlier, this idea that the prosecutor was just anticipating cross-examination. The defense counsel had given an opening statement and he didn't say anything along those lines. I mean, his whole argument was like, you're not gonna hear any corroboration. It's gonna come down to the credibility of the girls and that's all. There was no attacking Ms. Jones for not believing her daughters at the beginning. This was something the government introduced into the case for the first time in their direct examination of Ms. Jones. And I wanna go back really briefly to this idea that she was just giving context for why she came around to believe her daughters. There's just no evidence that that's what she was doing, but she didn't say it. I mean, what she's asked, did you believe your daughters? She says, yes. She's asked why? She says, because I don't think they would lie about something like this. She's not explaining why she came around to believing them. She's telling the jury that she just flat out believed them because she doesn't think they would tell a lie about something like this. Is that speaking to the veracity on this particular occasion as the government suggested? I mean- I'm not sure I really follow. Well, it seemed to be a new argument to me and I wasn't sure. Oh, that first argument? Yeah, first argument about- Yeah, about this- Taking it out of 608 and- Right, the Williams- Using the 701. I mean, that wasn't in the government's brief, so I can't speak directly to it, but just based on what Ms. Alon said, it seems like a very different context. It was about the defendant being asked if he's calling whoever's accusing him of something liars. I mean, that's certainly similar, but what we have is not that situation. It's asking a normal witness whether she believes another witness's story, and the circuits have roundly condemned that for a couple of reasons. One, it's just not helpful because it's juries who determine credibility. They're not supposed to hear what other witnesses think about the truth of another person's story, and it violates 608 for the reasons that we've already discussed. Aren't the circuits split on that issue? No, the circuits aren't split on that issue. I mean, every circuit that has addressed it in terms of lay witnesses says lay witnesses can't offer an opinion about whether a witness is being truthful on a certain occasion. What about the Eighth Circuit? The Eighth Circuit has, well, there's two Eighth Circuit cases. There's one that we cite in our briefs from the 1990s that says the rule that we say. The one the government cites in its brief is a very different context because the defense counsel invited it. Defense counsel asked the witness on cross-examination whether he or she, whoever it was, believed the story, and so he opened the door, or the defense counsel opened the door to it, so the court said there was no error in the prosecution following up on that. Obviously, a very different context from here where it's happening on direct examination with no opening the door, and without any kind of opening the door concerns, the circuits are unanimous on that, including the Eighth Circuit. Unless the court has further questions, I'll cede the remainder of my time. Thank you, counsel. We appreciate your arguments. They've been extremely helpful. Case will be submitted, and counsel are excused.